IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JARID WALKER,

   Plaintiff,

v.            Case No. 23-cv-104-NJR

DANIELLE ROBINSON,

   Defendant.

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Jarid Walker brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while he was a pretrial detainee at the Marion County Jail. Defendant Danielle Robinson seeks summary judgment (Doc. 40) on the basis that Walker failed to exhaust his administrative remedies before he filed this lawsuit. Walker filed a response in opposition to Robinson's motion (Doc. 41), and Robinson filed a reply (Doc. 42). On January 30, 2025, the Court held an evidentiary hearing.

## FACTUAL BACKGROUND

Walker filed his Complaint in January 2023 alleging a claim against Danielle Robinson for her treatment of his injured arm while he was a pretrial detainee at the Marion County Jail (Doc. 1). Walker alleged that as a result of a motor vehicle accident prior to his arrest, he suffered a severed vein and bicep (Doc. 11, pp. 1-2). Although he received medical treatment at a hospital, his bicep remained detached (*Id.*). After his

1

release from the hospital, he was arrested and booked into the Marion County Jail. Walker alleged that he notified Robinson of his injuries, but she failed to provide him with any treatment for months (*Id.* at p. 2). Instead, she merely provided him with over-the-counter pain medications (*Id.*). Walker informed her that the medications did not help his pain, but Robinson refused to provide him with any additional medication or refer him out of the jail for additional care (*Id.*). Three months later, he was rushed to the hospital for surgery as the result of an infection in his arm that was left untreated.

After a review of Walker's Complaint pursuant to 28 U.S.C. §1915A, he was allowed to proceed on the following count:

> Count 1:    Fourteenth Amendment medical claim against nurse Danielle Robinson for delaying medical care for Walker's infected arm.

The Marion County Jail has a grievance process, which is set forth in its "Detainee Rules and Regulations" manual (Doc. 40-1). The jail rules require a detainee with a problem to first bring the issue to the officer on duty (*Id.* at p. 5). If the detainee's issue is not resolved, he may request a grievance form that is then directed to the Jail Sergeant (*Id.*). If the detainee does not receive a resolution from the Jail Sergeant, he may then submit his grievance to the Jail Administrator. If the issue remains unresolved after the Jail Administrator responds, the last step is to submit the grievance to the Sheriff (*Id.*). The grievance form includes the steps in the grievance process on the form (Doc. 40-2). The form also notes that a detainee has 24 hours from the time of the incident to file a grievance and 24 hours from the receipt of each denial to appeal the grievance to the next step (*Id.*).

### A. Summary Judgment Motions

Defendant Robinson argues in her motion that Walker failed to exhaust his administrative remedies. According to the jail's grievance records, jail officials received only one grievance from Walker (Doc. 40-4). Specifically, on April 30, 2022, Walker submitted a grievance about the status of his clothes and wallet which were held in evidence (*Id*.). He asked that the property be released to his grandmother (*Id*.). The sergeant responded to Walker's grievance noting that he could obtain any property in evidence 30 days after his conviction or at the conclusion of the appeals process (*Id*.). There are no grievances in the record regarding Walker's medical treatment for his injured arm.

Walker argues in his response that he was thwarted in his attempts to file a grievance regarding his medical treatment (Doc. 41, p. 3). Walker alleges that he is left-handed and was unable to write with his left hand due to the injuries sustained in the motor vehicle accident. His hand was infected, swollen, and painful, preventing him from writing a grievance. He was also isolated in a medical cell and unable to file a grievance or speak to a jail official. Walker argues that he told nurse Robinson and jail officers that he was in a tremendous amount of pain. He also asked an officer, identified as Officer Smith a/k/a Smitty, to help him fill out a grievance, but the officer merely laughed at him and ignored his request (*Id*. at pp. 3-4). Walker argues that the Detainee Rules and Regulations were silent as to what a detainee should do if he was physically unable to file a written grievance. Walker acknowledges that there were other detainees in his cell, but he did not want to discuss his medical issues with those individuals (*Id*. at p. 6). After

Walker received treatment for his arm, he argues that there was no need to file a grievance because he had received the care he sought (*Id*. at p. 5).

### A. *Pavey* Hearing

On January 30, 2025, the Court held an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). The Court heard testimony from Walker.

Walker testified that he first arrived at the Marion County Jail after having emergency surgery on his left arm. He had just returned to his home when he was arrested and taken to the jail. He arrived at the jail approximately 3:30 a.m. and was originally placed in a receiving cell. He was not told about the grievance process at the jail at that time, although he did testify to knowing and understanding the jail's grievance process.

A few days after arriving at the Marion County Jail, Walker was moved to a medical isolation cell next to the nursing station. Walker testified that he was housed in the cell with two other detainees. There was a grievance form in the cell. Guards also made rounds, but merely opened the window in the cell door and looked in; the officers' actions were too quick to have time to talk to them. But Walker acknowledged that an officer accompanied the nurse every time she entered the cell. Walker testified that he spoke to both the nurse and the guards. He told officers every day that he was in pain and that he was not receiving care. He also testified that his arm was discolored and leaking fluids. Every officer who entered was aware of his condition because they provided him with new clothes on several occasions because of his leaking wound.

Walker admitted that he did not file a grievance about his medical care but testified that he was physically unable to write a grievance. Walker testified that he is left-handed. Because his injury was to his left hand, Walker testified that he was unable to use a utensil or write with his left hand. He testified that he is unable to write with his right hand and cannot even hold a pencil in his right hand. He acknowledged being able to eat meals with his right hand, but only in a limited capacity and with much difficulty. Writing, however, was impossible.

Walker testified that he asked Officer Smith to help him write a grievance, but Smith merely laughed at him. He acknowledged that there were two other individuals in his cell, but they were unable and/or unwilling to help. One was mentally handicapped and unable to speak. Walker testified that the other individual refused to interact with the guards and would not help him. Walker also tried to keep his distance from this cellmate due to the detainee's alleged crimes.

Walker admitted that he wrote a grievance eleven months after his arm had healed, but at that time he was able to write because his arm had fully healed. He also testified that the grievance process at the Marion County Jail required an individual to submit his complaint within 24 hours of the incident. Walker testified that by the time he was physically able to write a grievance, the deadline for submitting a grievance had long since passed.

## LEGAL STANDARDS

"Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the defendant] is

5

entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008), the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

## DISCUSSION

The Court finds that Walker was thwarted in his attempts to file a grievance.[1]

Walker clearly met the first requirement of the Marion County Jail's grievance procedure.

He testified that he brought his issues to the attention of the officers on duty several times

while housed in the medical unit (Doc. 40-1, p. 5). In fact, Walker testified that every time

an officer entered his cell, he complained about his pain, lack of care, and deteriorating

condition.

---

[1] To the extent that Robinson argues Walker failed to comply with SDIL Local Rule 56.1 and thus her factual statement should be deemed admitted, that request is denied. Walker is proceeding *pro se* and filed a response to the best of his abilities.

Although Walker complied with the first step of the grievance process, the next step required Walker to file a written grievance. But Walker testified that he was physically incapable of writing a grievance on his own due to his injury. Although the Seventh Circuit requires strict compliance with the exhaustion process, *see Dole*, 438 F.3d at 809, "[i]f administrative remedies are not 'available' to an inmate, then the inmate cannot be required to exhaust." *Kaba v. Stepp,* 458 F.3d 678, 684 (7th Cir.2006); *Hurst v. Hantke,* 634 F.3d 409, 412 (7th Cir. 2011) ("[A]n administrative remedy that would be forfeited for failure to comply with a deadline that in the circumstances could not possibly be complied with would not be 'available' within the meaning of [the PLRA.]"). Administrative remedies can become unavailable when an official fails to respond to a grievance or when an official's "affirmative misconduct" thwarts a plaintiff's attempts at exhaustion. *Lewis v. Washington*, 300 F.3d 829, 834 (7th Cir. 2002); *Dole*, 438 F.3d at 809. An individual's physical incapacity can also make the grievance process unavailable. *See Hurst*, 634 F.3d at 412 (noting that physical incapacitation was good cause for filing a delayed grievance). *See also Kincaid v. Sangamon County*, 435 F. App'x 533, 537 (7th Cir. 2011); *Fletcher v. Menard Correctional Center*, 623 F.3d 1171, 1173-74 (7th Cir. 2010) (when an inmate is facing imminent danger, an impediment to the grievance process can make the process unavailable); *Lanaghan v. Koch*, 902 F.3d 683, 688-89 (7th Cir. 2018) (grievance process was unavailable when plaintiff faced physical limitations and was not provided with the means or assistance to file a grievance).

Here, Walker credibly testified that he was physically unable to write a grievance on his own due to his injury. He testified that he simply could not write with his left hand

due to his wound and was unable to hold a pencil with his right hand due to the fact that he is left-handed. Walker also testified that he was thwarted by the guards because they refused to help him submit a grievance. He expressed his issues numerous times to the guards, but they refused to provide him with help. He also specifically asked one guard for help submitting a grievance and the officer merely laughed at him. The Court finds Walker's testimony about his inability to file a grievance to be credible. Further, Robinson failed to offer any evidence in either her brief or at the hearing to show that Walker was lying or that his testimony lacked credibility. Walker's undisputed testimony demonstrates that he was unable to file a grievance on his own, and the officers further frustrated his attempts to submit a grievance. Thus, Walker was effectively thwarted in his attempts to file a grievance.

Robinson argues that there is no futility exception to administrative exhaustion and that Walker could have filed a grievance after he was treated for his arm and fully healed. "Exhaustion is required even if the prisoner believes his efforts in securing relief will be futile or if the administrative authority has no power to grant the requested relief." *Obriecht v. Raemisch,* 517 F.3d 489, 492 (7th Cir.2008) (citations omitted). Robinson points to a grievance submitted by Walker ten months after his injury, noting that he was able to properly file a grievance at that time. But as Walker points out, the Marion County Jail's grievance procedures are silent as to whether an individual can file a late grievance. In fact, the grievance form itself states that a detainee only has 24 hours from the time of the incident to file a grievance (Doc. 40-2, p. 1). Nothing in the procedures or the form suggests that Walker could have filed a grievance *after* his injury healed. *See Ross v. Blake,*

9

578 U.S. 632, 643-4 (2016) (administrative process may be unavailable when it is so opaque that an "ordinary prisoner [cannot] discern or navigate it"); *Lanaghan*, 902 F.3d at 689-90 (plaintiff was not required to file a late grievance when the procedures failed to qualify the deadline or provide an exception). Walker further testified that by the time he was able to write, he was no longer experiencing denials in his medical care, and he was well beyond the 24-hour time limit. Thus, the grievance process regarding care for Walker's arm was unavailable to him.

## CONCLUSION

For the reasons stated above, Defendant Danielle Robinson's motion for summary judgment (Doc. 40) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: February 4, 2025**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**